UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JOSHUA BUTLER, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:17-cv-00427-JMS-DLP |
| BRIAN SMITH, | ) ) ) |
| Respondent. | ) |

**Order Granting Petition for Writ of Habeas Corpus
and Directing Entry of Final Judgment**

The petition of Joshua Butler for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. JCU 17-05-0018. For the reasons explained in this Entry, Mr. Butler's habeas petition must be **granted**.

**A. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003) ("*Piggie II*"); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

On May 11, 2017, Sergeant Wonder wrote a Conduct Report charging Mr. Butler with a violation of Code B-231, being under the influence of intoxicants. The Conduct Report states:

> On 5/10/17 at approximately 2026, Sgt. Wonder responded to a signal 3000 in D dorm. Upon arrival, Sgt. Wonder viewed Offender Butler, Joshua-991784 laying across a bunk area. The body of Offender Butler, Joshua-001734 was stiff, however his eyes were open. Sgt. Wonder began to speak with Offender Butler, Joshua-001784 and his speech was slurred. Offender Butler, Joshua- 991784 sat up on his own and then vomited on the dorm floor. A video camera was called for due to Offender Butler, Joshua-991784 displaying signs of being under the influence of an intoxicant. Sgt. Barnett arrived on scene and began to video record the incident. Sgt. Barnett asked Offender Butler, Joshua-991784 a series of questions, and Offender Butler, Joshua-991784 continued to talk with slurred speech and had trouble sitting in an upright position.

Dkt. 2-2 at 1; dkt. 8-1. Because Mr. Butler was displaying signs of being under the influence, Sergeant Barnett took a video recording of Mr. Butler on the bunk and being transported by medical staff. *See* dkt. 13 (*ex parte*). The officers sent Mr. Butler to the hospital to be examined. Mr. Butler was later discharged with paperwork that indicated that his diagnosis was "Gastroenteritis vs. Food Poisoning," and also listed "Viral Gastroenteritis" under discharge instructions. *See* dkt. 2-2 at 6; dkt. 8-8. When Mr. Butler returned to the Edinburgh Correctional Facility, he took a breathalyzer test and a urine screen, both of which showed no levels of intoxicants. Dkt. 2-2 at 11; 8-6; dkt. 8-7.

Mr. Butler was notified of the charge on May 11, 2017, when he received the Screening Report. Dkt. 2-2 at 2; dkt. 8-2. He pleaded not guilty to the charge, requested a lay advocate, and did not request any witnesses. For physical evidence, he requested the results of the drug screen, results of the breathalyzer test, and the hospital paperwork.

The respondent asserts that "Butler's request to see the video of the events was denied (Ex. C-6). Butler received a copy of the video review (Ex. C-7)." Dkt. 8 at 4. There is no Ex. C-6 or

Ex. C-7 attached to respondent's return, nor does it appear that Mr. Butler requested a video of the events. Nonetheless, the hearing officer determined that allowing Mr. Butler to view the video recorded evidence would jeopardize the safety and/or security of the facility. Thus, the hearing officer viewed the video evidence and completed a summary of the video, which states:

> I, Officer Behmlander, on 6/8/2017 reviewed the video evidence on Offender Butler, Joshua 991784 at the approximate time of 1420 hours. During the video it is mentioned no less than twice that the last thing Offender Butler remembered is smoking a cigerette. [sic] Sergeant Barnett asked offender Butler directly at one point "Mr. Butler, can I ask you a quick question? What was the last thing you remember?" Offender Butler simply stated: "Smoking A Cigerette [sic]" When asked questions during the video offender Butler's speech was slurred at best and he seemed to not be able to set [sic] up on his own. After about 16 minutes into the video Offender Butler is up, walking on his own and even stops to get himself some ice in his cup out of the ice room. He walks on his own out of the dorm and has to be told to get on the medical gurney and seems fine after 16 or 17 minutes into the video.

Dkt. 8-9.

The prison disciplinary hearing was held on June 9, 2017. According to the notes from the hearing, Mr. Butler stated: "I ate some food and it made me sick. The Sergeant came up and started video tapping [sic] me. The hospital sent me back with food poisoning and sent me back. I demanded a piss test and breathalyzer and passed both. They sent me back to the dorm." Dkt. 8-6. Mr. Butler also submitted a written statement. Dkt. 2-2 at 11; 8-7. Based on the Conduct Report and the video recording, the hearing officer found Mr. Butler guilty of B-231, being under the influence of intoxicants. The sanctions imposed included ninety (90) days of earned credit time deprivation and a credit class demotion. Dkt. 8-6.

Mr. Butler appealed to the Facility Head and the Indiana Department of Correction (IDOC) Final Reviewing Authority, both of which were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

3

C. **Analysis**

In his petition, Mr. Butler lists six grounds on which he challenges his prison disciplinary conviction: (1) the Conduct Report does not support the charge of "intoxicants" because it does not identify a specific intoxicant such that he could form a defense against the charge; (2) none of the requested physical evidence was considered during the disciplinary hearing process; (3) the disciplinary board improperly dismissed a doctor's evaluation that he was suffering from viral gastroenteritis or food poisoning; (4) refusing to allow him to view the video denied him due process because there is nothing in the record to show that his viewing of the video would pose a threat; (5) during the disciplinary hearing, his written statement was not considered even though it was exculpatory evidence; and (6) inmates who were written up with a ISF number were granted their appeals at Putnamville, while inmates written up with a JCU number were not. Mr. Butler acknowledges that he did not exhaust the last ground regarding different treatment among inmates. The respondent argues that Mr. Butler was afforded due process, there was sufficient evidence to support the conviction, and it was not erroneous to not allow Mr. Butler to view the video-tape. Mr. Butler did not file a reply brief and the time to do so has passed.

1. Denial of Breathalyzer and Urine Screen Reports

Mr. Butler asserts that despite his request for three pieces of physical evidence (results of the breathalyzer test, results of the urine screening, and the hospital paperwork) that would have exonerated him, none of that evidence was considered by the hearing officer.

An inmate "facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Due process requires "prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly

4

threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilt, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result. *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

The respondent admits that "Butler was not given paper copies of his breathalyzer and urine screen reports," but tries to justify the failure to give him that evidence by asserting because "IDOC did not challenge the results of the screens[,] [w]ritten confirmation of the agreed upon results is merely cumulative." *Id.* It is true that "prisoners do not have the right to call witnesses whose testimony would be irrelevant, repetitive, or unnecessary," *Pannell v. McBride*, 306 F.3d 499, 503 (7th Cir. 2002), and this analysis has been applied to physical evidence, *Portee v. Knight*, 90 Fed. Appx 178 (7th Cir. 2004). However, here, there is no indication in the record (either in the Screening Report or the Disciplinary Hearing Report) that IDOC acknowledged the results of the screens, that IDOC did not challenge the results of the screens, or that IDOC accepted the results of the screens. While Mr. Butler provided testimony that he passed these tests, the review and submission of paper copies of his breathalyzer and urine screen reports was not merely cumulative and was relevant and necessary because these screen reports were a verifiable, independent, unbiased source of evidence that Mr. Butler did not test positive for intoxicants on his return from the hospital. Moreover, the paper copies of his screen reports were exculpatory and material because they undermined the finding that he was under the influence of intoxicants and created a reasonable probability of a different result. *See Jones*, 637 F.3d at 847; *Toliver*, 539

F.3d at 780-81. "[A] hearing officer cannot refuse to consider an inmate's evidence simply because other evidence supports a finding of guilt." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016). The denial of evidence here was therefore a violation of Mr. Butler's due process rights.

### 2. Hospital Paperwork

Mr. Butler asserts that the hearing officer improperly failed to review and consider the hospital paperwork even though the paperwork was exculpatory.

As noted above, "a hearing officer cannot refuse to consider an inmate's evidence simply because other evidence supports a finding of guilt." *Ellison*, 820 F.3d at 274. As in *Ellison*, "[t]he issue here is not whether [the] conduct report [and video review] provided a sufficient basis to find [Mr. Butler] guilty, since a hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Id.* (internal citations omitted). "But when a prisoner contends that he was denied access to evidence necessary to defend against a disciplinary charge, his claim is properly understood as 'one of procedural due process rather than sufficiency of the evidence.'" *Id.* (citing *Viens v. Daniels*, 871 F.2d 1328, 1336 n.2 (7th Cir. 1989)).

The respondent claims that "[t]he Disciplinary Hearing Report shows the DHO considered '[t]he evidence and/or witness statements that you requested at your screening'"" and that "[t]his would have included considering the medical form, the results of the drug and breathalyzer screens, and Butler's own statements." Dkt. 8 at 11. The respondent is referring to a pre-printed line that is found on each and every form:

[form excerpt: "The evidence and / or witness statements that you requested at your screening or were otherwise requested by staff was / were considered. The following evidence was relied on to reach the decision in this hearing:" with checkboxes — Staff Reports ☒, Statement of Offender ☐, Evidence from Witnesses ☐, Other (specifically ____), Physical Evidence (specifically ☒ Video Recording)]

6

Dkt. 8-6 at 1 (highlighting added). Pointing to this pre-printed line as proof that the hearing officer allegedly considered all requested physical evidence at screening is improper and is no better than "adding a checkmark to preprinted boilerplate," *see Johnson,* 681 Fed. Appx. at 497, particularly when there is nothing in the record that the hospital paperwork or screening tests were even presented at the hearing.

The respondent attempts to argue that the hospital paperwork was "not clear" about the actual diagnosis, that the form is used for different types of patients, that no particular type of follow-up was listed, and that the sheet was not signed by medical personnel or by Mr. Butler. *See* dkt. 8 at 12-13. A portion of the hospital paperwork is as follows:

**Discharge Instructions for:** Butler, Joshua Lee
**Arrival Date:** Wednesday, May 10, 2017

Thank you for choosing Johnson Memorial Hospital for your care today. The examination and treatment you have received in the Emergency Department today have been rendered on an emergency basis only and are not intended to be a substitute for an effort to provide complete medical care. You should contact your follow-up physician as it is important that you let him or her check you and report any new or remaining problems since it is impossible to recognize and treat all elements of an injury or illness in a single emergency care center visit.

**Care provided by:** Qualls, Jeff, MD
**Diagnosis:** Gastroenteritis vs. Food Poisoning

| DISCHARGE INSTRUCTIONS | FORMS |
|---|---|
| Viral Gastroenteritis | Where Should I Go For Care? <br> HTN Screening |
| **FOLLOW UP INSTRUCTIONS** | **PRESCRIPTIONS** |
| Private Physician <br> When: As needed; Reason: Continuance of care | None |
| **SPECIAL NOTES** | |
| None | |

Dkt. 2-2 at 6; 8-8. The hospital paperwork is clearly tailored to Mr. Butler, bearing his name and arrival date. It clearly states that care was provided by Dr. Jeff Qualls. It clearly states a diagnosis of "Gastroenteritis vs. Food Poisoning." It further includes follow up instructions: "Private

7

Physician" as needed for continuance of care. The respondent's attempts to discredit the value of the hospital records are meritless.

Thus, because the hospital paperwork was exculpatory and material, the hearing officer's failure to consider the hospital paperwork at all is also a violation of Mr. Butler's due process. *Ellison*, 820 F.3d at 274.

        3.      Video Review

Although Mr. Butler did not specifically request review of the video evidence in his Screening Report, the hearing officer relied on the video evidence in his determination, but would not allow Mr. Butler to view the video on the theory that the video "would jeopardize the safety and/or security of the facility." *See* dkt 8-9.

"[P]rison authorities who assert a security justification for nondisclosure [of video evidence] still have the burden of proving that their denial of requested evidence was not 'arbitrary or capricious.'" *Johnson v. Brown*, 681 Fed. Appx. 494, 496 (7th Cir. 2017) (quoting *Piggie v. McBride*, 277 F.3d 922, 925 (7th Cir. 2002) ("*Piggie I*")). This burden was not met here. Notably, as happened here, "adding a checkmark to preprinted boilerplate saying that disclosing evidence '. . . would . . . jeopardize the safety and/or security of the facility' is inadequate to override the right to disclosure under the Due Process Clause." *Id.* at 497 (collecting cases). In order for the withholding of the video to be justified, a more thorough explanation is required. *See id.* ("[C]hecking a box does not explain how th[e] standard is met."). As the Seventh Circuit has repeatedly explained, the prison's practice of checking a box on a form "effectively encourages prison staff to *always* opt for nondisclosure, which is not permissible." *Id.* (citing *Piggie II*, 344 F.3d at 679 ("[W]e have never approved of a blanket policy of keeping confidential security camera videotapes for safety reasons."); *Whitlock v. Johnson*, 153 F.3d 380, 388 (7th Cir. 1998);

8

*Hayes v. Walker*, 555 F.2d 625, 630 (7th Cir. 1977) (explaining that courts must be able to evaluate whether prison staff acted arbitrarily and thus "some support for the denial of a request for witnesses" is required).

The respondent here asserts that "letting Butler view or have a copy of the tape could cause a security risk because it would reveal information about how prisoners are transported to hospitals and reveal the identities of the emergency services workers who responded to the facility's request for assistance." This is not a compelling security or safety reason. The video was a handheld recording from a non-hidden cell phone that Mr. Butler saw. The video closely followed Mr. Butler from his bunk to the outside of the prison where he was placed on a gurney. Mr. Butler was a first-hand witness to how he was transported and he (and the other inmates in his area) saw the faces of the emergency services workers who responded to the incident. It is puzzling how it would later be a security risk to show Mr. Butler something he already witnessed. Rather, the prison's denial of showing of the video was arbitrary and the respondent's reasoning here was at most a half-hearted *post hoc* justification.

However, in this case, despite the improper denial of Mr. Butler's viewing of the video, because the video was not exculpatory evidence, the denial here was harmless error and federal habeas relief on this ground is not warranted. *Jones*, 637 F.3d at 847–48; *see also Davis v. Ayala*, 135 S. Ct. 2187, 2197-98 (2015).

    4.    <u>Other Grounds</u>

Because Mr. Butler was denied due process when the hearing officer failed to consider timely requested physical evidence, Mr. Butler's other grounds need not be discussed.

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. Because Mr. Butler was not afforded due process and there was insufficient evidence of Mr. Butler's guilt, the disciplinary finding of guilt was arbitrary and that finding and the sanctions imposed in JCU 17-05-0018 must be **VACATED AND RESCINDED**. Accordingly, Mr. Butler's petition for a writ of habeas corpus is **GRANTED**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 5/23/2018

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

JOSHUA BUTLER
991784
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Katherine A. Cornelius
INDIANA ATTORNEY GENERAL
katherine.cornelius@atg.in.gov